IN THE U.S. DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **William Duong** \* | |
| 410 Blue Silk Lane | |
| Apt. B \* | |
| Gaithersburg, Maryland 20879 | |
| Crofton, MD 21114 \* | |
| | |
| **Ipsita Mukherjee** \* | |
| 17815 Stoneridge Drive | |
| North Potomac, Maryland 20878 \* | |
| | |
| **Andrei Chapoval** \* | |
| 3050 Milltowne Drive | |
| Unit 305 \* | |
| Ellicott City, Maryland 21043 | |
| \* | |
| *On behalf of themselves and* | Case No. _____ |
| *others similarly situated* \* | **JURY TRIAL REQUEST** |
| | |
| **Plaintiffs** \* | |
| v. | |
| \* | |
| **American Gene Technologies** | |
| **International Inc.** \* | |
| 9713 Key West Ave. 5th Floor | |
| Rockville, Maryland 20850 \* | |
| | |
| **Jeffrey A. Galvin** \* | |
| 410 Misty Knoll Drive | |
| Rockville, MD 20850 \* | |
| | |
| **Defendants.** \* | |
| _____/ | |

## COLLECTIVE ACTION COMPLAINT UNDER THE FAIR LABOR STANDARDS ACT AND CLASS ACTION COMPLAINT

Plaintiffs William Duong and Ipsita Mukherjee (collectively, the "Plaintiffs"), on behalf of themselves and others similarly situated, by and through undersigned counsel, state a collective action complaint against American Gene Technologies International Inc. ("AGT"), and Jeffrey A. Galvin ("Galvin") (collectively, the "Defendants"), pursuant to the Fair Labor Standards Act, 29

U.S.C. § 201 *et seq*. ("FLSA"), and further states a putative class action against Defendants pursuant to Fed. R. Civ. P. 23, alleging supplemental state law claims under the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. 3-401 *et seq* ("MWHL"), and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. 3-501 *et seq.* ("MWPCL"), and demands a jury trial, as follows:

## Introduction

1. This is a collective action for unpaid minimum and overtime wages, liquidated damages, and other relief provided by the FLSA, 29 U.S.C. § 201 *et seq.*, and a putative class action alleging supplemental state law claims under the MWHL, Md. Code Ann., Lab. & Empl. 3-401 *et seq.*, and the MWPCL, Md. Code Ann., Lab. & Empl. 3-501 *et seq.*

2. Plaintiffs seek on behalf of themselves and others similarly situated, in addition to the actual sums owed, liquidated and statutory damages pursuant to the FLSA, MWHL, and MWPCL, and attorneys' fees and costs as provided under the under the FLSA, MWHL, and MWCPL

## Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 206, 29 U.S.C. § 207, and 28 U.S.C. § 1331.

4. This Court has supplemental jurisdiction over the MWHL and MWPCL claims pursuant to 28 U.S.C. § 1367(a) because said claims are so related to the FLSA claims that they form part of the same case or controversy.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b), because Defendants do business within this judicial district and the events giving rise to these claims occurred in this

judicial district.

## Parties

6. Defendant AGT is a biotech company formed in the state of Delaware, but is headquartered and operated out of Rockville, Maryland.

7. At all times material herein, Defendant AGT had an annual gross volume of sales made or business done in an amount exceeding $500,000.00.

8. At all times material herein, Defendant AGT has employed at least two or more employees who are engaged in commerce, and who produce goods for commerce, or handle, sell, or otherwise work on goods or materials that have moved in or were produced for commerce as a single enterprise under the FLSA.

9. For instance, there are employees of Defendant AGT, like Plaintiff Mukherjee who handle chemicals, samples, and drugs which are shipped in interstate commerce. There are employees who, like Plaintiff Mukherjee, use test tubs, pipets, centrifuges, and other medical research equipment and devices that have crossed interstate and even international boundaries. There are employees who use cleaning products, office supplies, and computers that have moved in interstate commerce. And there are employees, like Plaintiff Duong, who speak with and secure investments from investors located not only in other states but in other countries.

10. Accordingly, Defendant AGT satisfies the enterprise coverage provisions under the FLSA.

11. Defendant AGT also satisfies the coverage provisions of the MWHL.

12. As a covered enterprise, Defendant AGT has at all material times been an "employer" within the meaning of the FLSA, MWHL, and MWPCL.

13. Defendant Galvin is the CEO of Defendant AGT.

14. As the CEO of Defendant AGT, Defendant Galvin has complete operational control of Defendant AGT. Defendant Galvin is responsible for managing the strategic direction and overall success of Defendant AGT.

15. Upon information and belief, Defendant Galvin maintains custody and control of Defendant AGT's business records and is responsible for maintaining those records, including payroll records.

16. Defendant Galvin is involved in the hiring and firing of employees, and possessed the ability to hire employees or direct them to be fired. For example, he signed the offer letter for Plaintiffs Duong and Chapoval. Likewise, Defendant Galvin was responsible for announcing the mass layoff of employees, which included Plaintiffs, and other similarly situated employees.

17. Defendant Galvin is directly involved in personnel matters. For example, after the mass layoffs, Defendant Galvin told Plaintiff Duong directly that he would be one of the few employees retained to keep Defendant AGT operating, that he had worked out all the logistics to be able to continue paying him, and that Defendants could afford to pay him and wanted him to stay on.

18. Additionally, upon information and belief, Defendant Galvin was, and continues to be, aware of operational issues throughout the business and is knowledgeable of Defendant AGT's past and present employment practices and policies, including but not limited to Defendant AGT's failure to pay wages to employees.

19. For all times material to this case, Defendant Galvin possessed and continues to possess the authority and discretion to fix, adjust and determine hours worked and amounts

paid with respect to employees at Defendant AGT, including Plaintiffs' and other similarly situated employees.

20. Upon information and belief, Defendant Galvin received and continues to receive income from Defendant AGT and has been enriched by the failure of the Defendant to properly pay their workers.

21. At all times material herein, Defendant Galvin has been an "employer" within the meaning of the FLSA, MWHL, and MWPCL. Respondent Galvin is jointly and individually liable for damages to the Plaintiffs, and other similarly situated employees, under the FLSA, MWHL, and MWPCL.

22. Plaintiffs, and other similarly situated employees, worked for Defendants in various capacities, and failed to receive *any* wages coinciding with Defendants' failure to make payroll on or about April 16, 2024.

23. Therefore, Plaintiffs, and other similarly situated employees seek unpaid wages in amounts to be determined based on the evidence, as well as liquidated and statutory damages, pursuant to the FLSA, MWHL, and MWPCL, and attorneys' fees and costs as provided under the FLSA, MWHL, and MWCPL.

24. By failing to pay the wages, and at least the minimum wages, that were due to Plaintiffs, and other similarly situated employees, Defendants willfully violated very clear and well-established minimum wage provisions of the FLSA. In addition to actual sums owed, Plaintiffs seek liquidated (statutory) damages pursuant to the FLSA, prejudgment interest on all amounts owed under the MWHL, three times the unpaid wages owed under the MWHL pursuant to the statutory damage provisions of the MWHL and MWPCL, and attorneys' fees and costs as provided under the FLSA, the

MWHL, and the MWPCL.

## Factual Allegations

25. Plaintiffs worked for Defendants in various capacities at Defendant AGT, but all ceased to receive wages from on or about April 16, 2024 until the end of their employment.

### William Duong

26. Plaintiff Duong was employed by the Defendants from on or about June 2022 until, on or about May 27, 2024.

27. Plaintiff Duong was employed in business development, and his duties and responsibilities were to communicate and attract investors to invest in Defendant AGT.

28. Plaintiff Duong was paid an annual salary of $62,000.00, and was paid on a bi-monthly basis.

29. Plaintiff Duong was supposed to receive his pay for the second-half of April, 2024 on May 7, 2024. However, on May 7, 2024, he did not receive any pay whatsoever.

30. The next day, on May 8, 2024, there was a mass layoff. However, Plaintiff Duong, and a select few other employees, were asked to continue working as part of a sort of "skeleton crew" for Defendants.

31. Plaintiff Duong was explicitly promised by Defendant Galvin that he would receive pay for continuing to work, despite the mass layoff. Defendant Galvin explicitly told him that he had worked out the logistics of how he would be paid, that Defendants could "afford" to keep him on and wanted him to stay and help them get through this period. These promises were repeated by Defendant Galvin approximately four days later, on or about May 12, 2024.

32. On May 21, 2024, however, Plaintiff Duong was informed by Defendant Galvin, that

Defendants did not know how they were actually going to pay Plaintiff Duong, or any of the remaining employees who had been kept on as part of the skeleton crew.

33. Despite this, Defendants expected Plaintiff Duong to continue working for them. In particular, on May 24, 2024, samples from a long-time partner organization needed to be handed off to Defendants. Plaintiff Duong was asked by Defendant Galvin several times if he could complete that task. Plaintiff Duong did so, and was then told by Defendants to submit reimbursement for mileage and expense – which he has, unsurprisingly, not received.

34. Moreover, Plaintiff Duong continued to receive calls from investors and patients of Defendant AGT, and Plaintiff Duong continued to field these calls on behalf of Defendants.

35. On May 27, 2024, Plaintiff Duong met with Defendant Galvin seeking clarity about his status and whether he would be receiving any pay. Defendant Galvin told Plaintiff Duong he could not promise or guarantee any pay to Plaintiff, but nevertheless told Plaintiff Duong, "if you can continue to help me, I'd really appreciate it."

36. Despite this request, Plaintiff Duong had all of his access to Defendant AGT's employee portal revoked. Combined with Defendants admission that they did not know if they could pay him, Plaintiff Duong interpreted these series of events to mean he had been terminated.

37. In addition to not receiving any wages for work performed since April 16, 2015, Plaintiff Duong has not received any payment for his unused paid-time-off ("PTO"), which he estimates to be approximately eighty (80) hours.

38. Although Plaintiff Duong worked until on or about May 27, 2024, the last pay period

he ever received wages for was April 1, 2024 to April 15, 2024.

39. Plaintiff Duong continued to work, despite not getting paid, because of the false promises that he would receive pay as part of a skeleton crew to help keep Defendant AGT operational.

40. Even after Defendants had to admit to Plaintiff Duong that they did not know how they would pay him, Defendant Galvin *still* tried to induce Plaintiff Duong to continue working for him and Defendant AGT as some kind of favor.

41. By failing to properly pay at least the minimum wage due to Plaintiff Duong, Defendants willfully violated very clear and well-established minimum wage provisions of the FLSA and MWHL.

42. Additionally, by failing to pay Plaintiff Duong any of the wages due to him between April 16, 2024 and on or about May 27, 2024, Defendants willfully violated the MWPCL.

## Ipsita Mukherjee

43. Plaintiff Mukherjee was employed by the Defendants from October 2022 to May 8, 2024.

44. Plaintiff Mukherjee was employed as a scientist for Defendant AGT.

45. Plaintiff Mukherjee was paid an annual salary of $110,000 and was paid on a bi-monthly basis.

46. Plaintiff Mukherjee received a paycheck for the second-half of April 2024. However, when Plaintiff Mukherjee attempted to deposit the paycheck, it bounced.

47. On May 8, 2024, Plaintiff Mukherjee was laid off as part of a mass layoff.

48. Plaintiff Mukherjee received a termination letter from Defendants, which indicated she

was owed her wages for the 1st week of May, as well as approximately $4,600.00 for unused paid-time-off.  The termination letter, however, made no mention of the bounced paycheck for the second-half of April 2024.

49. Despite the admissions in the termination letter, Plaintiff Mukherjee still has not received *any* wages since April 16, 2024.

50. By failing to properly pay at least the minimum wage due to Plaintiff Mukherjee, Defendants willfully violated very clear and well-established minimum wage provisions of the FLSA and MWHL.

51. Additionally, by failing to pay Plaintiff Mukherjee any of the wages due to her between April 16, 2024 and May 8, 2024, Defendants willfully violated the MWPCL.

<u>Andrei Chapoval</u>

52. Plaintiff Chapoval was employed by the Defendants from August 2022 to May 6, 2024.

53. Plaintiff Chapoval was employed as a principal scientist for Defendant AGT.

54. Plaintiff Chapoval was paid an annual salary of $140,000, and was paid on a bi-monthly basis.

55. Plaintiff Chapoval was laid off on May 6, 2024 as part of a mass lay off.

56. The last paycheck Plaintiff Chapoval received was on April 22, 2024, for the pay period of April 1, 2024 to April 15, 2024.

57. Plaintiff Chapoval was given an employee exit check list upon his termination, which promised that he would receive pay until May 31, 2024.

58. However, Plaintiff Chapoval has not received *any* wages since his April 22, 2024 paycheck, and has otherwise not been paid for any work he performed between April 16, 2024 and May 6, 2024.

59. In addition to not receiving any wages for work performed since April 16, 2015, Plaintiff Chapoval has not received any payment for his unused paid-time-off ("PTO"), which he estimates to be between 56 to 64 hours.

60. By failing to properly pay at least the minimum wage due to Plaintiff Chapoval, Defendants willfully violated very clear and well-established minimum wage provisions of the FLSA and MWHL.

61. Additionally, by failing to pay Plaintiff Chapoval any of the wages due to her between April 16, 2024 and May 8, 2024, Defendants willfully violated the MWPCL.

## Class Allegations

62. Plaintiffs seek to represent two distinct classes: (A) one FLSA Class (Counts I); and (B) one Maryland Class (Counts II and III).

    a. The "FLSA Class" (Counts I) consists of all persons who performed any work for Defendants from April 1, 2024 to the present.

    b. The "Maryland Class" (Counts II & III) consists of all persons who performed any work for Defendants from April 1, 2024 to the present.

    c. Excluded from the FLSA Class and the Maryland Class are bona fide owners, officers, managers, and directors of any of the Defendants.

63. There are questions of fact and law common to both classes FLSA Class and the Maryland Class), including but not limited to:

    a. Whether Defendants refused and failed to ensure that Plaintiffs and other similarly situated employees were paid for all hours actually worked;

    b. Whether Defendants refused and failed to ensure that Plaintiffs and other similarly situated employees were paid all wages promised and owed to them;

    c. Whether Defendants refused and failed to ensure that Plaintiffs and other similarly situated employees were paid for all paid-time-off accrued and owed upon termination; and

    d. Whether there is a genuine bona fide dispute as to the unpaid wages claimed by the proposed Maryland Class Members, thus rendering Defendants liable to Plaintiffs and all similarly situated employees for statutory damages under the MWPCL, Md. Ann Code LE art. § 3-501 et seq., and if there is a lack of a bona fide dispute, whether Plaintiffs are entitled to receive statutory enhancements in addition to the recovery of unpaid wages/deductions.

64. The claims of Plaintiffs are typical of the class they seek to represent. Moreover, the questions of fact and law common to Class Members predominate over any questions affecting only individual members, as all Class members are employees who were recently terminated, and were not properly paid their wages, and at least the minimum wage for work performed since April 16, 2024. Individual issues will relate solely to the quantum of relief due to the individual Class Members. Upon information and belief, Plaintiffs believe that the potential Class Members number at least fifty (50) persons. The proposed classes are easily ascertainable as the number and identities of the Class Members are readily determinable from employee and payroll records that the Defendants maintain.

65. Plaintiffs will fairly and adequately protect the interests of the class. The interests of the named Plaintiffs are consistent with, and not antagonistic to, those of the class.

66. The named Plaintiffs are represented by competent counsel who are experienced in complex FLSA litigation. Both lawyers who represent the Plaintiffs (and opt-in

Plaintiffs) in this case are licensed to practice in the District of Maryland and have combined experience of more than thirty (30) years of practice before the U.S. District Court for the District of Maryland.

67. A hybrid class/collective action is superior to other available methods for the fair and efficient adjudication of this controversy and is consistent with the legislative history of the FLSA. Class action treatment will permit a large number of similarly situated persons to receive notice and prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that number individual actions engender.

68. Maintenance of this action as a hybrid class/collective action would promote the equitable administration of justice because pursuing claims on an individual basis would be disproportionately expensive.

69. The prosecution of separate claims by individual Class Members would create a risk of inconsistent or varying adjudications with respect to the individual members of that class that would establish incompatible standards of conduct for Defendants.

### **Causes of Action**

### **COUNT I**
### **(FLSA – Failure to Pay Minimum Wage)**

70. Plaintiffs incorporate paragraphs 1-69 as set forth above, and state that the actions of Defendants complained of herein constitute a willful violation of 29 U.S.C. § 206 (minimum wage) because Defendants have failed to pay Plaintiffs at least the minimum wage beginning on or about April 16, 2024 to the end of their employment.

71. As a result, Plaintiffs, and putative members of the FLSA Class have the legal right to receive the full minimum wage, as required by the FLSA.

## COUNT II
### (MWHL - Failure to Pay Minimum Wage)

72. Plaintiffs incorporate paragraphs 1-71 as set forth above, and state that the actions of Defendants complained herein constitute a willful violation of Md. Ann. Code LE Art. § 3-413 (minimum wage), because Defendants failed to pay Plaintiffs the proper minimum wage for all hours worked, free and clear and in a timely manner.

73. As a result, Plaintiffs, and putative members of the Maryland Minimum Wage Sub-Class, have the legal right to receive the full minimum wage, as required by Maryland law and applicable Maryland regulations.

## COUNT III
### (MWPCL Act – Unpaid Wages)

74. Plaintiffs incorporate paragraphs 1-73 as set forth above, and state that the actions of Defendants, in refusing to pay Plaintiffs, and putative members of the Maryland Unpaid Wage Sub-class the wages they are due, including overtime wages, is a violation of the MWPCL, Md. LE Art. § 3-501 *et seq*.

75. That the MWHL further compels each covered employer and non-exempt employee to make, as part of any working agreement, a promise to pay at least minimum and overtime compensation as applicable under the MWHL.

76. That impliedly, by operation of law, Plaintiffs, and putative members of the Maryland Unpaid Wage Sub-Class, at all times they were performing work for Defendants, were entitled to be paid the wages promised to them, and at least minimum wages, by Defendants under the MWHL.

77. That there are no bona fide disputes between the parties as to the right of Plaintiffs, and putative members of the Maryland Unpaid Wage Sub-Class, to be paid all wages due

arising from their employment. Defendants know, or should know, that they are covered entities under the MWHL, and that Plaintiffs, and putative members of the Maryland Unpaid Wage Sub-Class, performed work as employees for which they were not properly compensated. There is no bona fide dispute that the Defendants had no right to withhold these wages under Maryland law. In the case of wages due on or about April 16, 2024 and subsequently after, Plaintiffs have not received any paychecks. Defendants have not only admitted to this failure to pay in some cases, they have continued to encourage certain Plaintiffs to work through this period where they have not been paid.

78. Plaintiffs, and putative members of the Maryland Unpaid Wage Sub-Class, are thus entitled under MWPCL, Md. LE Art. § 3-507.2 to an award of treble damages and attorneys' fees with respect to the wages that have gone unpaid.

**Prayer**

Based on the foregoing allegations, Plaintiffs respectfully request that this Court render judgment as follows:

(a) Certify this action as a collective action pursuant to 29 U.S.C. § 216(b), and (i) compel Defendants to provide all material contact information, including email addresses and telephone numbers, for potential opt-in Plaintiffs who performed any work for Defendants from April 1, 2024 to the present; (ii) issue appropriate Notices as will be requested in Plaintiff's Motion for Conditional Certification; (iii) supervise the maintenance of this FLSA collective action; and (iv) supervise and enter appropriate orders allowing this matter to be tried as an FLSA collective action;

(b) Certify the claims under the MWHL and the MWPCL as set forth in Counts II and III

as class actions pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(c) Order Defendants to pay Plaintiffs, and all similarly situated employees of Defendants, all unpaid minimum wage payments determined by the Court to be due and owing, under the FLSA, MWHL, and MWPCL, as well as well as a sum of liquidated damages in an amount equal to the amount of any unpaid wage payments awarded to Plaintiffs pursuant to the FLSA and MWHL;

(d) Order Defendants to pay the Plaintiffs, and all similarly situated employees of Defendants, all wages promised, determined by the Court to be due and owing, under the MWPCL, as well as treble damages for all wage payments due and owing under the MWPCL;

(e) Award Plaintiffs, and all similarly situated employees of Defendants, their attorneys' fees and costs in pursuing this action;

(f) Award Plaintiffs, and all similarly situated employees of Defendants, interest on any sums determined due and owing from Defendants, including pre-judgment interest on attorneys' fees and costs in pursuing this action;

(g) Grant Plaintiffs, and all similarly situated employees of Defendants, any additional relief that the Court deems appropriate and just.

Respectfully submitted,

*/s/_Howard B. Hoffman*_____
Howard B. Hoffman (Federal Bar No. 25965)
Jordan S. Liew, Esq. (Federal Bar No. 20509)
HOFFMAN EMPLOYMENT LAW, LLC
2400 Research Boulevard, Suite 380
Rockville, Maryland 20850
T:  (301) 251-3752
F.  (301) 251-3753 (fax)
hhoffman@hoholaw.com
jliew@hoholaw.com

*Counsel for Plaintiffs*

## Jury Demand

The Plaintiffs, by and through their attorneys, hereby demand a jury trial as to all issues triable by a jury.

*/s/ Howard B. Hoffman*
 Howard B. Hoffman